[600 NYS2d 962]

In the Matter of EDWARD T. LONGO, Petitioner, v JOHN M. DOLCE, as Commissioner of Public Safety of the City of White Plains, et al., Respondents.

Second Department, August 2, 1993

## APPEARANCES OF COUNSEL

*Servino & Seymour,* White Plains *(Anthony J. Servino* of counsel), for petitioner.

*Anthony J. Grant, Corporation Counsel* of the City of White Plains *(Daniel K. Spencer* of counsel), for respondents.

## OPINION OF THE COURT

Per Curiam.

In this proceeding we are asked to consider the constitutionality of a urinalysis test administered to the petitioner two days after he was arrested for driving while intoxicated.

The petitioner, Edward T. Longo, is a firefighter in the employ of the City of White Plains Fire Department. On December 19, 1989, while off duty, the petitioner was involved in a serious automobile accident when the vehicle he was operating crashed into the rear of another car which was stopped for a red light. The petitioner was able to extricate

himself from the vehicle and was standing at the side of the road when a City of White Plains police officer arrived upon the scene. The driver of the vehicle that was struck and another witness, both of whom were standing with the petitioner, insisted that the petitioner was intoxicated. Although the petitioner refused to submit to a blood-alcohol test, the police "REPORT OF REFUSAL TO SUBMIT TO CHEMICAL TEST" stated that the petitioner was incoherent and smelled of alcohol. The petitioner was arrested and charged with operating a motor vehicle while intoxicated (see, Vehicle and Traffic Law § 1192 [2]).

The day following the accident, the respondent John Cullen, the Fire Chief of the City of White Plains Fire Department, advised Carmine Motto, the Deputy Commissioner of the City of White Plains Department of Public Safety, of the petitioner's accident. Motto wanted to determine that the petitioner was not using drugs and to that end he directed Chief Cullen to order the petitioner to give a sample of his urine for testing purposes. The petitioner was informed that if he did not provide the sample he would be suspended. The sample was obtained on December 21, 1989, two days after the accident, at the petitioner's home while the petitioner was off duty. Upon analysis, the petitioner's urine sample was found to contain THC, a metabolite of marihuana.

As a result of the petitioner's arrest for driving while intoxicated and the subsequent positive urinalysis, a series of departmental charges were brought against him. These charges were amended when a subsequent investigation revealed that the petitioner had never informed the Fire Department about a 1984 arrest in Florida for "driving while intoxicated" to which the petitioner pleaded nolo contendere, and which resulted in the suspension of his driver's license.

Thereafter, an administrative hearing was held on all charges. During the hearing the Hearing Officer received into evidence the results of the urinalysis test administered to the petitioner. At the conclusion of the hearing, the Hearing Officer found the petitioner not guilty with respect to those charges brought as a result of the December 1989 arrest for driving while intoxicated. However, with respect to those charges based upon the marihuana-positive urinalysis test result, and the charges based upon the petitioner's 1984 Florida conviction for driving while intoxicated, as well as his failure to inform the Department about that arrest and conviction, the petitioner was adjudged guilty of violating various

Department rules. As a result, the Hearing Officer recommended that the petitioner be dismissed from service as a White Plains firefighter. Thereafter, the respondent John Dolce, Commissioner of Public Safety of the City of White Plains, adopted the Hearing Officer's findings and recommendations in their entirety, and, by a final determination dated July 11, 1990, dismissed the petitioner, effective immediately.

The petitioner then commenced a proceeding pursuant to CPLR article 78 in the Supreme Court, Westchester County, which was transferred to this Court pursuant to CPLR 7804 (g). The petitioner argues, *inter alia,* that, at the time of his urine testing, no reasonable suspicion existed that he had used illegal drugs, and, therefore, the testing violated his constitutional right to be secure against unreasonable searches and seizures. However, under the facts and circumstances of this case, we find that the urine test administered to the petitioner was constitutionally permissible.

It is well settled that the collection and subsequent analysis of urine samples are deemed searches within the meaning of the Fourth Amendment *(see, Skinner v Railway Labor Executives' Assn.,* 489 US 602; *Copeland v Philadelphia Police Dept.,* 840 F2d 1139, *cert denied* 490 US 1004; *Matter of Patchogue-Medford Congress of Teachers v Board of Educ.,* 70 NY2d 57). It is also clear that, as a general rule, a warrantless search must be based upon probable cause that the person to be searched has violated the law *(see, New Jersey v T. L. O.,* 469 US 325). However, the "showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable" *(Skinner v Railway Labor Executives' Assn., supra,* at 624). Indeed, the Supreme Court has recognized that "where the privacy interests implicated by the search are minimal, and where an important government interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion" *(Skinner v Railway Labor Executives' Assn., supra,* at 624; *see also, Delaware v Prouse,* 440 US 648, 654). Moreover, we have previously held that "drug testing in the absence of individualized suspicion is reasonable within the meaning of the Fourth Amendment * * * where, because of a direct bearing of the mental faculties of the public employee on the health and safety of others, a 'triggering event' *(see, Skinner v Railway Labor Executives' Assn., supra,* 489 US, at [623]; *see also, Matter of Seelig v Koehler,* [151 AD2d 53,] 65-66), *such as*

*an automobile accident (cf., Fiorenza v Gunn,* 140 AD2d 295, 299), mandates employer inquiry" *(Matter of Barretto v City of New York,* 157 AD2d 116, 120 [emphasis supplied]).

When these principles are applied to the facts at bar, it becomes apparent that there was a reasonable basis to require the petitioner to submit to a urinalysis test. The decision ordering the petitioner to undergo urinalysis was triggered by what may be characterized as a "spectacular" car accident. As related to the investigating police officer at the scene of the accident, the petitioner's vehicle came up behind two vehicles which were stopped at an intersection for a red light, struck the vehicle in the left lane, flipped over, struck the vehicle in the right lane, and then skidded past them, ultimately coming to a rest, in an upside-down position, on the far side of the intersection. Such an accident, coupled with the investigating officer's observation that the petitioner was incoherent and smelled of alcohol, and the petitioner's refusal to submit to a blood test, clearly "provided a reasonable basis for the invasion of the petitioner's privacy which the order to produce a urine specimen occasioned" *(Matter of Barretto v City of New York,* 157 AD2d 116, 120, *supra).*

We are also mindful that the governmental interest in testing the petitioner, even without a showing of individualized suspicion, is highly compelling, given the nature of his profession. In fact, firefighting is, in and of itself, so fraught with risks of injury to both the firefighter and those the firefighter seeks to aid, that the diminished mental capacity attendant upon the use of drugs is an intolerable condition which could very well lead to disastrous and lethal consequences *(see, Skinner v Railway Labor Executives' Assn., supra).* "By ensuring that employees in safety-sensitive positions know that they will be tested upon the occurrence of a triggering event * * * [there is a] deterrent effect of the administrative penalties associated with the prohibited conduct * * * concomitantly increasing the likelihood that employees will forgo using drugs or alcohol while subject to being called for duty" *(Skinner v Railway Labor Executives' Assn., supra,* at 630). Therefore, we reject the petitioner's contention that the decision ordering him to undergo urinalysis testing constituted an unreasonable search and seizure under either the Constitutions of the United States or the State of New York.

With regard to charge I, specification 3; charge II, specification 3; and charge IV, specification 3; three of the five

charges and specifications involving the petitioner's 1984 plea of *nolo contendere* to a charge of driving while intoxicated in Florida, we observe that these charges and specifications expressly and improperly relied upon the truth of the facts in the Florida indictment. A plea of *nolo contendere* in a criminal proceeding cannot be relied upon in a subsequent civil or administrative action as proof of the facts alleged in the indictment *(see, Wyche v Florida Unemployment Appeals Commn.,* 469 So 2d 184 [Fla]; *see also,* Black's Law Dictionary 1048 [6th ed 1990]). This is to be distinguished from those cases wherein a plea of *nolo contendere* is relied upon only as proof of the conviction itself *(see, Matter of Scotto,* 167 AD2d 89).

However, charge VI, specification 1, the fifth charge and specification which involved the plaintiff's 1984 Florida prosecution, alleged that the petitioner failed to inform his superiors of the proceeding in accordance with applicable Department rules. Contrary to the petitioner's assertion, he is estopped from raising the 18-month period of limitations contained in Civil Service Law § 75 (4) with respect to this charge. It was the petitioner's own wrongful concealment which engendered the delay in prosecution, and the charge was promptly lodged once the respondents were made aware of the Florida prosecution *(see, Matter of Steyer,* 70 NY2d 990).

It is our opinion that, under all the facts and circumstances of this case, the penalty of dismissal was not so disproportionate to the offense so as to shock one's sense of fairness *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Barretto v City of New York, supra; see also, Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld,* 91 AD2d 190).

We have considered the petitioner's remaining contentions and find them to be without merit.

Accordingly, the determination is modified, on the law, by annulling the determinations of guilt on charge I, specification 3; charge II, specification 3; and charge IV, specification 3; and dismissing those specifications; as so modified, the determination is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.

SULLIVAN, J. P., LAWRENCE, COPERTINO and SANTUCCI, JJ., concur.

Adjudged that the determination is modified, on the law, by

annulling the determinations of guilt on charge I, specification 3; charge II, specification 3; and charge IV, specification 3; and dismissing those specifications; as so modified, the determination is confirmed and the proceeding is dismissed on the merits, without costs or disbursements.